**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION**

KYLE BERMINGHAM,

        Plaintiff,

v.                                                 Case No. 5:12-cv-37-Oc-37PRL

CITY OF CLERMONT, FLORIDA; and
STEPHEN GRAHAM,

        Defendants.

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's Omnibus Motions in Limine (Doc. 76), filed August 29, 2013;

2. Defendant, City of Clermont's, Response in Opposition to Plaintiff's Omnibus Motion in Limine (Doc. 81), filed September 12, 2013;

3. Defendant's Motion to Deny Plaintiff's Omnibus Motions in Limine Section II.A (Doc. 92), filed October 28, 2013; and

4. Plaintiff Kyle Bermingham's Response to Defendant's Motion to Deny Plaintiff's Motion in Limine Section II-A, and Incorporated Memorandum of Law (Doc. 93), filed November 4, 2013.

Upon consideration, the Court finds that Plaintiff's Omnibus Motions in Limine (Doc. 76) is due to be granted in part and denied in part.

**BACKGROUND**

Plaintiff was an officer with the City of Clermont Police Department whose employment was governed by a Collective Bargaining Agreement between the International Union of Police Associations and the City of Clermont. (*See* Doc. 39, p. 3;

Doc. 39-17; Doc. 39-18.) Plaintiff was terminated after he complained to the City and the Florida Department of Law Enforcement about Chief Graham's allegedly unlawful police practices. (Doc. 54-1; Doc. 54-2.) Thereafter, Plaintiff filed a grievance with the City, alleging that his termination violated the terms of the Collective Bargaining Agreement. (Doc. 39-44; Doc. 39-45.) After the City Manager upheld his termination on initial review, Plaintiff brought his grievance to arbitration. (Doc. 39-45.) Ultimately, the arbitrator determined that the City had just cause to terminate Plaintiff and that none of his rights under the Agreement had been violated. (*Id.*) Plaintiff subsequently brought this 42 U.S.C. § 1983 claim, alleging that the City fired him in retaliation for engaging in speech protected by the First Amendment.

In its Order on the parties' motions for summary judgment, the Court determined that Plaintiff's complaints about his supervising officer qualified as protected speech. The only issues that remain to be tried are whether Plaintiff's protected speech played a substantial role in the City's decision to fire him, and, if so, whether the City "would have reached the same conclusion in the absence of the protected [speech]." *See Brochu v. City of Riviera Beach*, 304 F.2d 1144, 1157 (11th Cir. 2002) and damages.

Plaintiff now moves to exclude documents related to the arbitration proceedings in which he and Defendant participated during the course of Plaintiff's employment. (Doc. 76, pp. 3–5.) Defendant opposes. (Doc. 81.) Both parties filed supplemental briefing. (Doc. 92; Doc. 93.) This matter is now ripe for the Court's adjudication.

## DISCUSSION

Defendant seeks to introduce evidence related to arbitration in which the parties engaged during Plaintiff's employment. (Doc. 81, Doc. 92.) The proceedings involved arbitral review of whether Chief Graham's decisions to discipline—and ultimately

2

terminate—Plaintiff's employment violated the terms of the parties' Collective Bargaining Agreement. (*See* Doc. 46-27; Doc. 46-36; Doc. 39-45.)

Plaintiff moves to exclude these documents on the grounds that they are irrelevant and unfairly prejudicial. (Doc. 76, pp. 3–5.) Defendant opposes, arguing that arbitral decisions deserve special weight in this Court's consideration because of the expertise that arbitrators have in the "law of the shop" and the "strong federal policies" favoring arbitration. (Doc. 92, p. 5.) Defendant further contends that the arbitrator's decisions are probative of the motivations behind Defendant's ultimate decision to terminate Plaintiff. (Doc. 81, p. 6.) Additionally, Defendant avers that the arbitral decisions are relevant to determining who constitutes a final policymaking authority for the City's employment decisions. (Doc. 81, p. 7.)

## I.     Deference to Arbitral Decision Under § 1983

Defendant argues that "strong federal policies favoring arbitration" and the arbitrator's "specialized competence . . . [in] the law of the shop" render his decision especially probative in this § 1983 action. (*See* Doc. 92, p. 5.) The U.S. Supreme Court has squarely rejected this proposition.

The federal policies favoring arbitration are limited to situations where "an employee seeks to vindicate his contractual right under a collective-bargaining agreement." *Alexander v. Gardner-Denver*, 415 U.S. 36, 49 (1974). In these contractual disputes, arbitrators have special expertise in the "law of the shop"—that is, "knowledge and judgment concerning the demands and norms of industrial relations"—and courts ordinarily defer to arbitral decisions. *See id.* at 56–58; *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 737 (1981). However, an employee's rights pursuant to a collective bargaining agreement are separate and distinct from rights

3

granted by statute. *See Gardner-Denver*, 415 U.S. at 49–50. Where an employee seeks to vindicate a right granted by statute, such as the § 1983 claim here, the right involves the "law of the land," and arbitrators are awarded no special deference.[1] *See McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 290 (1984) (observing that, "although arbitration is well suited to resolving contractual disputes, . . . it cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard"). Accordingly, this Court need not give any special weight to Defendant's proffered arbitration documents in this § 1983 action. *See Barrentine*, 450 U.S. at 728.

## II.   Admissibility of Arbitration Documents

Although they are awarded no special deference, "an arbitral decision *may* be admitted as evidence in a § 1983 action" at the discretion of the court. *McDonald*, 466 U.S. at 292 n.13 (emphasis added). However, the U.S. Supreme Court has cautioned courts to "ever be mindful that Congress . . . thought it necessary to provide a judicial forum for the ultimate resolution of [these] claims . . . [and that it] is the duty of courts to assure the full availability of this forum." *Id.*

### A. Defendant's Motivation

Defendant argues that the arbitration evidence is relevant to show that it

---

[1] In reaching this conclusion, the U.S. Supreme Court noted that an arbitrator's expertise in the "law of the shop" is unrelated to the "expertise required to resolve the complex legal questions that arise in § 1983 actions." *McDonald*, 466 U.S. at 290. Moreover, "because an arbitrator's authority derives solely from the contract, . . . when the rights guaranteed by § 1983 conflict with provisions of the collective-bargaining agreement, the arbitrator must enforce the agreement." *Id.* at 291. Additionally, "arbitral factfinding is generally not equivalent to judicial factfinding," lacking the complete record, rules of evidence, and "rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination, and testimony under oath." *Id.*

discharged Plaintiff for reasons unrelated to his protected expression. (Doc. 81, p. 6.) According to Defendant, the arbitration awards demonstrate that Defendant's decisions to discipline Plaintiff complied with the terms of the Collective Bargaining Agreement, which in turn demonstrates that Defendant acted out of legitimate non-speech-related concerns. (*Id.*)

Here, the questions posed before the arbitrator were whether Defendant's disciplinary decisions—including the termination decision—violated Plaintiff's rights under the Collective Bargaining Agreement with the city, not whether they violated his First Amendment rights. (*See* Doc. 39-45, p. 2; Doc. 81, p. 5.) Thus, the arbitrator's ultimate conclusions have no bearing on Plaintiff's constitutional claim and should be excluded as irrelevant. *See Arlio v. Lively*, 474 F.3d 46, 52 (2d Cir. 2007) (holding that a district court abused its discretion by admitting evidence of similar arbitration proceedings in a police officer's § 1983 First Amendment retaliatory firing claim).

Moreover, even if the arbitration documents were marginally relevant, their probative value would be substantially outweighed by their considerable danger of confusing the issues and unfairly prejudicing Plaintiff. This danger is especially acute with respect to the post-termination arbitration proceedings, where the arbitrator characterized the "core issue" before him as whether Plaintiff's "activities concerning his allegation of criminal misconduct against Chief Graham" violated the Clermont Police Department's "Standards of Conduct." (*See* Doc. 39-45, p. 12.) This Court has already determined that those activities were protected by the First Amendment. (*See* Doc. 64, p.8.) The arbitrator's conclusion that Plaintiff's activities gave his employer "just cause" to terminate him veers impermissibly close to an "expert" determination that the City fired Plaintiff for reasons unrelated to protected speech. *See Arlio,* 474 F.3d at 53

(observing that although arbitrators are not experts in § 1983 retaliatory firing claims, they nevertheless have the "allure" of experts and juries often feel a "strong compulsion to conform their verdict to the conclusion of [arbitrators]")

Accordingly, the Court finds that the arbitration documents are not relevant to Defendant's motivation behind terminating Plaintiff, and their admission would unduly prejudice Plaintiff. Accordingly, they are inadmissible. *See* Fed. R. Evid. 401, 403.

### B. Final Policymaking Authority

Defendant also contends that the arbitration documents are relevant to determining who constitutes the final policymaking authority for purposes of § 1983 municipal liability. (*See* Doc. 81, p. 7.) The Court disagrees. First, "the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge before the case is submitted to the jury." *Scala v. City of Winter Park*, 116 F.3d 1396, 1398–99 (11th Cir. 1997) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). The Court now determines that City Manager Saunders is the final policymaking authority for the City's employment decisions. (*See* Doc. 64, p. 11 n.7.); *see also* Clermont, Fla., Municipal Code § 32(a); *Hill v. Clifton*, 74 F.3d 1150, 1152 (11th Cir. 1996); *Martinez v. City of Opa-Locka*, 971 F.2d 708, 715 (11th Cir. 1992). Second, Defendant's argument that the arbitrator constitutes a final policymaking authority for the City is directly foreclosed by *Carter v. City of Melbourne,* 731 F.3d 1161, 1167 (11th Cir. 2013) ("An independent arbitrator, who is not otherwise an employee of the city, is not vested with final policymaking authority for the city."). Accordingly, the arbitration evidence is not admissible on the issue of final policymaking authority.

Finally, the Court notes that Defendant initially raised this argument in its

6

Response to Plaintiff's Omnibus Motions in Limine, filed September 12, 2013. (Doc. 81, pp. 6–8.) Though Defendant did not directly address the issue in its supplemental briefing on the arbitration issue (Doc. 92), Defendant filed a proposed jury instruction on November 5, 2013, which included the following language: "An 'official policy or custom' in this instance means . . . [a] policy statement or decision made by the arbitrator who heard Mr. Bermingham's employment grievances . . . ." (Doc. 98, p. 10.) In the interim, on September 23, 2013, the U.S. Court of Appeals for the Eleventh Circuit published *Carter*, which controls this case and directly forecloses the argument that an arbitrator can qualify as a final policymaking authority. *See Carter*, 731 F.3d at 1167. Defendant failed to address *Carter* in either its supplemental briefing or its proposed jury instructions. Counsel for Defendant in this action is also listed as Counsel of record for Defendant-Appellees in *Carter*. The Court reminds Counsel for the Defendant that attorneys have a professional and ethical obligation of candor to the court and to address controlling contradictory authority.

## CONCLUSION.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Omnibus Motions in Limine (Doc. 76) is **GRANTED IN PART AND DENIED IN PART**.

    a. The motion is granted with respect to testimony and documentary evidence related to the prior arbitration proceedings, which is excluded.

    b. The motion is **DENIED** with respect to testimony and documentary evidence concerning Plaintiff's disciplinary history, which is admitted on the condition that no reference to the arbitration proceedings is

      made.

2.     Defendant's Motion to Deny Plaintiff's Omnibus Motions in Limine Section II.A (Doc. 92) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 8, 2013.

_____
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record